STATE v. TOMLINSON.

[66 South. 974.]

INDICTMENT AND INFORMATION. *Validity. Vote of grand jury.*
    Where a grand jury having voted an indictment against a defend-
    ant, but afterwards on a motion, a majority of the grand jury
    voted to reconsider, when being informed by the district attor-
    ney that it took two-thirds of the jury to reconsider, they reg-
    ularly returned the indictment into court. In such case the
    indictment was not invalid, though the advice of the district
    attorney on the question of parliamentary law was incorrect.

APPEAL from the circuit court of Harrison county.
HON. J. J. BALLENGER, Judge.

S. A. Tomlinson was indicted for issuing a false cer-
tificate to a deed with intent to defraud. From a judg-
ment sustaining a motion to quash the indictment, the
state appeals.

The facts are fully stated in the opinion of the court.

*Geo. H. Ethridge,* Assistant Attorney-General for the
state.

I respectfully submit that the grand jury having re-
turned the bill into court in the regular manner, no evi-
dence could be introduced for the purpose of impeach-
ing its action under the circumstances. The record, after
filing, is done in the circuit court, after the matter has
been presented by the required number, is conclusive,
and cannot be impeached at all. It is especially true that
they could not be impeached by members of the grand
jury, who presented the indictment. The court must pre-
sume that at the time the indictment was presented into
court that all of the jurors who appeared in the court
room consented to the return of the indictment, unless

something is done in the court to indicate to the contrary.

If indictments should be quashed on the evidence procured after their return, the gravest public mischief would result. . Throughout the history of English law, the rule has prevailed that a juror would not be heard to testify to impeach his finding. The only extent to which he can testify is to the conduct of parties in the grand jury room, or for the purpose of sustaining his return to the court.

I, therefore, suggest and submit that the trial judge erred in quashing this indictment, and the case should be reversed and remanded for further proceedings on the indictment in the circuit court.

*Hanun Gardner,* for appellee.

Let us keep always in mind what is fundamentally necessary to a valid indictment, the very *sine qua non* of its existence. Section 1417, Code 1906, provides: "The concurrence of twelve of the grand jurors shall be necessary to the finding of an indictment or making a presentment."

How is it to be known among the grand jury and in their deliberations with each other, whether there is such a concurrence, how are they to proceed with their business, and in determining what they are doing and have done? There are no statutory rules. They must of course proceed according to the usual conventions governing deliberative bodies so far as practicable, otherwise of course, there would be confusion. Mr. Wigmore says in vol. 4, sec. 2352: "The deliberations of a jury must be conducted with strict regard to certain formalities of conduct during retirement, formalities which, though not vital in a particular case, yet are indisputably wholesome as requirements of general policy. They are mere outward marks of general policy or conventions, but they are more technically strict because the

impossibility under the principle already examined, of regarding jurors' actual motives and reasonings, makes it the more necessary to depend upon the conventional canons of behavior for confidence in the verdict.'' It is true it is stated, and probably correct as stated, in some cases ''That strict parliamentary rules should not be applied'' so long as the substance thereof rather than pure technical forms are followed, but it is undoubtedly true that results arrived at must be known by some kinds of adherance to these conventional canons of procedure, for the manifest reasons mentioned.

What then are the general or conventional canons of such procedure and where do we find them? In this country, Roberts' Rules of Order are the accepted rules of such conduct. *Ashton* v. *City of Rochester*, 28 Am. St. 623. Turning then to these Rules we find on page 188:

''By general consent, that is, if no one objects, the rules relating to the transaction of business can at any time be ignored without the formality of a motion.''

Again on page 185: ''If the motion to reconsider is carried, the chairman announces that the question now recurs on the adoption of the question, the vote which has just been reconsidered; the original question is in exactly the same condition as it was before the first vote was taken on its adoption and must be disposed of by vote.'' Also at page 77: ''The effect of the adoption of this motion (the motion to reconsider) is to place before the assembly the original question in the exact position it occupied before it was voted upon.'' And at page 78: ''A reconsideration requires only a majority vote, regardless of the vote necessary to adopt the question reconsidered.''

Quoting *Ashton* v. *City of Rochester, supra*: The resolution was by the adoption of the motion to reconsider brought back to the state in which it was before the final vote by which it was originally passed. The vote on the resolution was reconsidered and consequently the

effect which it would otherwise have was lost." See, also, *Lake* v. *Ocean City,* 41 Atl. 428; 29 Cyc. 1619; 34 Cyc. 574; 22 Cyc. 208, and notes under each.

Therefore, regardless of whether the motion put on the Friday before was a motion to reconsider or simply one to hear further evidence, it is clearly established that the motion on the following Tuesday, the day of final adjournment was strictly and technically a motion to reconsider, and was made and put without objection as no one objected; was therefore, in order, carried by a majority vote; was therefore, in legal effect, reconsidered, and the question then stood on the original proposition, namely, shall an indictment be voted, and the latter was not again put or voted and the jury adjourned without further action, and the bill was therefore not a true bill, and when returned was the same as if returning a pretended bill of indictment as a true bill, but which had not, as a matter of fact, even been put to a vote at all, and had never been concurred in by twelve of the jury. Its validity was that of a spurious or forged bill, one having writing on its face, but dead writing.

COOK, J., delivered the opinion of the court.

This is an appeal by the state from the judgment of the circuit court of Harrison county, sustaining a motion to quash an indictment against appellee charging him with issuing a false certificate to a deed, with the intent to defraud. Appellee was a notary public, and was charged with falsely certifying to an acknowledgment to a deed, which purported to have been signed by Mrs. Rozellia Manola. In support of the motion to quash the indictment, it was shown that the grand jury voted for the bill of indictment on Thursday, and same was signed by the foreman and entered on the docket of the grand jury as a true bill. It appears that the grand jury, for some reason, did not return the indictment at once, but adjourned on Friday until the following Tuesday. On

Friday, the day after the bill was found, it appears that a motion to reconsider was defeated by a vote of seventeen against the motion, with only three votes for the motion. When the jury reconvened on Tuesday, a motion was made by one of the members to reconsider the indictment. When the indictment was found, there were present twenty members of the jury. When the motion was made to reconsider, only sixteen members were present, nine or ten of whom voted to reconsider. The evidence further shows that the district attorney was called in, and his advice was taken as to whether or not the indictment could be reconsidered by less than two-thirds of the jury voting therefor. The district attorney advised the jury that it would require the vote of two-thirds of the grand jury to carry a motion to reconsider. It seems that the advice of the district attorney was accepted as the law of the case, and "the indictment was presented to the court by the foreman of the grand jury, with his name indorsed thereon, in the presence of at least twelve of said jury," and the same was received and marked "filed," and such entry was signed by the clerk, strictly in accordance with section 1418, Code 1906. The evidence seems to show that the grand jury knowingly presented the bill to the court as a true bill, probably because they believed that the motion to reconsider failed on account of the fact that two-thirds of the members did not vote for the motion.

It is now insisted that the district attorney was wrong in his opinion, that by all the rules of parliamentary law it only requires a majority vote of the members present to reconsider a vote taken by a deliberative body. However this may be, it seems clear that the grand jury bowed to the district attorney's opinion, and subsequently presented the bill to the court in due form. There seems to be no doubt that the grand jury accepted and adopted the district attorney's opinion, and acted on same without question. It is unnecessary for us to

decide as to the correctness of the district attorney's. opinion, because we do not think that the validity of in-- dictments returned into courts should be made to de- pend upon questions of parliamentary law. It is certain that the indictment was. presented by the grand jury,. and it makes no difference that they would not have done so, if they had been properly advised by the district. attorney.

*Reversed and remanded.*